UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| NEW YORK WATER MANAGEMENT, INC., | No.: 18-cv-7102 |
| Plaintiff, | **COMPLAINT** |
| -against- | |
| DELSHAH CAPITAL, LLC, POONAM APARTMENTS LLC, 185-225 PARK HILL LLC, and KIMSO APARTMENTS LLC, | |
| Defendants. | |

---

New York Water Management, Inc. ("Plaintiff" or "NYWM"), as and for its Complaint against Delshah Capital, LLC ("Delshah"), Poonam Apartments LLC ("Poonam"), 185-225 Park Hill LLC ("185-225 Park Hill"), and Kimso Apartments LLC ("Kimso") (together, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. In essence, this is a simple collection action by plaintiff NYWM due to Defendants' failure and refusal to pay three invoices for services that NYWM performed for Defendants. Delshah retained NYWM to identify and attempt to adjust, *inter alia*, real estate tax credits due to Defendants on certain properties owned/managed by the Defendants. NYWM duly performed its services, which resulted in savings to Defendants totaling $5,213,007.50. Pursuant to the contract between NYWM and Delshah, Delshah was required to pay to NYWM 30% of the amount saved due to NYWM's efforts. Accordingly, NYWM remitted three invoices, totaling $1,563,902.24. However, Defendants have improperly refused to pay the amounts due and owing to NYWM.

2. Defendants are therefore reaping the benefits of over $5,000,000 worth of savings while refusing to pay Plaintiff for obtaining such savings.

**THE PARTIES**

3. Plaintiff NYWM is a New Jersey corporation, having its principal place of business located in Hackensack, New Jersey.

4. Upon information and belief, defendant Delshah is New York limited liability company, having its principal place of business located in New York, New York. Upon information and belief, all of the members of Delshah are citizens of the State of New York.

5. Upon information and belief, defendant Poonam is a New York limited liability company, having its principal place of business located in Richmond, New York. Upon information and belief, all of the members of Poonam are citizens of the State of New York.

6. Upon information and belief, defendant 185-225 Park Hill is a New York limited liability company, having its principal place of business located in Richmond, New York. Upon information and belief, all of the members of 185-225 Park Hill are citizens of the State of New York.

7. Upon information and belief, defendant Kimso is a New York limited liability company, having its principal place of business located in Richmond, New York. Upon information and belief, all of the members of Kimso are citizens of the State of New York.

**JURISDICTION AND VENUE**

8. Diversity jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1332. The Plaintiff is not a citizen of the same state as any of the Defendants. The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

9. Personal jurisdiction over the Defendants is proper under New York CPLR § 301. This Court has personal jurisdiction over Defendants, who, upon information and belief, are domiciled and reside in New York and regularly conduct business in New York.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 139 in that, upon information and belief, at least one the defendants, Delshah, is domiciled and resides in this district.

## FACTS

11. NYWM is a full-service real estate consulting firm that helps property owners in New York City save money in key areas such as water billing and property tax abatements.

12. Upon information and belief, Delshah is a New York City-based real estate private equity and asset management firm that invests in real estate equity and debt investments.

13. Upon information and belief, Michael Shah ("Shah") is the founder and managing partner/member of Delshah.

14. On or about July 30, 2008, NYWM and Delshah entered into a written agreement (the "Contract"), wherein Delshah retained NYWM to identify and attempt to adjust payments for sewer rents, water charges, improvement assessments, and real estate taxes due to Delshah on properties owner/managed by Delshah.

15. The Contract specifically referenced three properties, located at the following addresses and Boroughs/Blocks/Lots ("BBLs"), respectively: 140, 160, and 180 Park Hill Avenue, BBL 5/2922/265 (the "140 Property"); 185 and 225 Park Hill Avenue, BBL 5/2922/150 (the "225 Property"); and 240, 260, and 280 Park Hill Avenue, BBL 5/2922/1 (the "240 Property") (together, the "Properties").

16. The Properties referenced in the Contract are all located in Staten Island, New York.

17. As per the parties' negotiations, NYWM agreed to reduce its rate for its services to Delshah from thirty-three percent (33%) down to thirty percent (30%).

18. Thus, as reflected in the Contract, Delshah agreed that if NYWM is successful in obtaining refunds or credits that are due to Delshah, Delshah would pay to NYWM thirty percent

3

(30%) of any savings for a twenty-four (24) month proactive period, and that any retroactive savings would be billed at the same rate.  As per the Contract, Delshah agreed that payment will be due at the time that it receives the refunds or credits.

19. Upon information and belief, the 140 Property is currently owned by Poonam.

20. Upon information and belief, the 225 Property is currently owned by 185-225 Park Hill.

21. Upon information and belief, the 240 Property is currently owned by Kimso.

22. Upon information and belief, Delshah, and/or its member Shah, maintains a direct or indirect ownership interest in Poonam, in 185-225 Park Hill, and in Kimso.  Thus, Delshah, and/or its member Shah, have at least indirect ownership interests in each of the Properties.

23. Upon information and belief, Delshah manages all three of the Properties.

24. Indeed, Delshah's website lists all three of the Properties among its portfolio.

25. NYWM duly and timely performed all of its obligations under the Contract.

26. Pursuant to the Contract, NYWM reviewed Department of Finance ("DOF") records for each of the Properties and determined that a potential error existed.  NYWM immediately filed a case to reinstate J-51 benefits (*i.e.*, property tax exemptions and abatements for renovating a residential apartment building) for each of the Properties.  Following ample correspondence and negotiations with the DOF, each of the claims was approved, the real estate tax adjustments from the DOF were posted to Delshah's accounts, and all necessary corrections were made.

27. As a result of NYWM's efforts, Defendants saved $1,782,632.89 for the 140 Property, $1,662,635.02 for the 225 Property, and $1,767,739.59 for the 240 Property, for a total savings of $5,213,007.50.

28.     Accordingly, pursuant to the Contract, Delshah owed to NYWM $1,563,902.24, representing 30% of Delshah's total savings.

29.     On or about July 4, 2018, NYWM sent three letters dated June 25, 2018 to Delshah, attention to Michael K. Shah, each attaching an invoice with respect to one of the three Properties.

30.     Specifically, NYWM sent a letter to Delshah (attention to Shah) dated June 25, 2018 concerning the 140 Property. That letter explained that pursuant to Delshah's retention of NYWM to audit, identify, file and recover real estate tax credits, refunds and/or savings from the DOF, NYWM reviewed the 140 Property and determined that a potential error existed, and that NYWM filed a case to reinstate J-51 benefits. As the letter further explained, after correspondence and negotiations with the DOF, the claim was approved, the real estate tax adjustments from the DOF were posted to Delshah's account, and all necessary corrections were made. The total retroactive adjustments for tax years 2003/04-2008/09 were in the amount of $1,782,632.89. Thus, pursuant to the Contract, NYWM billed Delshah for $534,789.86, representing 30% of the amount that Delshah saved due to NYWM's efforts. The letter attached invoice number 72734, which outlined the description of work, savings, rate, and amount, and the total amount due of $534,789.86. The letter and invoice concerning the 140 Property are annexed hereto as **Exhibit 1**.

31.     NYWM also sent a letter to Delshah (attention to Shah) dated June 25, 2018 concerning the 225 Property. That letter similarly explained that pursuant to Delshah's retention of NYWM to audit, identify, file and recover real estate tax credits, refunds and/or savings from the DOF, NYWM reviewed the 140 Property and determined that a potential error existed, and that NYWM filed a case to reinstate J-51 benefits. As the letter further explained, after correspondence and negotiations with the DOF, the claim was approved, the real estate tax adjustments from the DOF were posted to Delshah's account, and all necessary corrections were

made.  The total retroactive adjustments for tax years 2003/04-2008/09 were in the amount of $1,662,635.02.   Thus, pursuant to the Contract, NYWM billed Delshah for $498,790.51, representing 30% of the amount that Delshah saved due to NYWM's efforts.  The letter attached invoice number 72733, which outlined the description of work, savings, rate, and amount, and the total amount due of $498,790.51.  The letter and invoice concerning the 225 Property are annexed hereto as **Exhibit 2**.

32.     NYWM also sent a letter to Delshah (attention to Shah) dated June 25, 2018 concerning the 240 Property.  That letter similarly explained that pursuant to Delshah's retention of NYWM to audit, identify, file and recover real estate tax credits, refunds and/or savings from the DOF, NYWM reviewed the 140 Property and determined that a potential error existed, and that NYWM filed a case to reinstate J-51 benefits.  As the letter further explained, after correspondence and negotiations with the DOF, the claim was approved, the real estate tax adjustments from the DOF were posted to Delshah's account, and all necessary corrections were made.  The total retroactive adjustments for tax years 2003/04-2009/10 were in the amount of $1,767,739.59.   Thus, pursuant to the Contract, NYWM billed Delshah for $530,321.87, representing 30% of the amount that Delshah saved due to NYWM's efforts.  The letter attached invoice number 72732, which outlined the description of work, savings, rate, and amount, and the total amount due of $530,321.87.  The letter and invoice concerning the 240 Property are annexed hereto as **Exhibit 3**.

33.     Delshah has not denied that the Contract governs the Plaintiff's entitlement to remuneration.

34.     Defendants have refused to pay the three invoices that are due and owing.

35. Defendants have not disputed that NYWM performed the work pursuant to the Contract, as described in the three letters and invoices.

36. Indeed, Delshah has been in communication with, and following up with, NYWM for several months concerning the refunds as to, *inter alia*, the status, the time frame, the receipt of the checks, the deposit of the checks, and the breakdown of the refunds to Defendants.

37. Nor have Defendants disputed that as a result of NYWM's efforts, Defendants saved a total of $5,213,007.50, as reflected in the three invoices.

38. Rather, it is apparent that Delshah is now improperly attempting to re-negotiate its Contract with NYWM to try to save money for work that was already fully performed for the Defendants.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Breach of Contract – as to Delshah)**

39. Plaintiff repeats and re-alleges all of the foregoing allegations of the Complaint as if set forth fully herein.

40. NYWM duly and timely performed all of its obligations under the Contract.

41. NYWM invoiced Delshah for the monies owed to NYWM, totaling $1,563,902.24.

42. There remains due and owing from Delshah to NYWM the amount of $1,563,902.24 for services rendered.

43. Despite due demand, and without any fault of the part of NYWM, Delshah has breached the Contract by failing to pay for the services rendered by NYWM and by rejecting the amount owed to NYWM.

44. As a direct result of Delshah's breach, NYWM has been damaged in the amount of $1,563,902.24, and is entitled to interest thereon from July 4, 2018.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Account Stated – as to all Defendants)**

45. Plaintiff repeats and re-alleges all of the foregoing allegations of the Complaint as if set forth fully herein.

46. NYWM timely provided Defendants with an accounting detailing the amounts owed to NYWM on account of the services provided to Defendants for the Properties.

47. NYWM's Statements of Account were received by Defendants in the regular course of business and Defendants never objected to same other than to the 30% rate of payment.

48. NYWM had previously rendered other services to Defendants pursuant to the Contract with respect to one or more of the Properties, which NYWM invoiced at the rate of 30% of the savings, and which Defendants paid to NYWM in full and without objection.

49. By reason of the actions as set forth herein above, an account has been stated in the amount of $1,563,902.24, which sum remains due and owing by the Defendants to NYWM.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Quantum Meruit – as to all Defendants)**

50. Plaintiff repeats and re-alleges all of the foregoing allegations of the Complaint as if set forth fully herein.

51. NYWM provided good and valuable services in good faith to Defendants with respect to the Properties.

52. The Defendants accepted the services provided to them by NYWM.

53. As a result of NYWM's efforts, the Defendants saved $5,213,007.50.

54. NYWM had an expectation to be compensated for the services it rendered to Defendants at the rate of 30% of the amount that Defendants saved, amounting to $1,563,902.24.

55. NYWM provided Defendants with an accounting of the work performed and the amounts owed to NYWM for the services provided.

56. Defendants have failed to make full payment to NYWM for the services rendered on their behalf.

57. The reasonable value of said services provided which remain unpaid is $1,563,902.24.

58. By reason of the foregoing, Defendants should be required to pay NYWM the balance of the services rendered to them, under the theory of quantum meruit.

## AS AND FOR A FOURTH CAUSE OF ACTION
**(Unjust Enrichment – as to all Defendants)**

59. Plaintiff repeats and re-alleges all of the foregoing allegations of the Complaint as if set forth fully herein.

60. NYWM has provided good and valuable services to Defendants for which NYWM has not been fully paid.

61. The reasonable value of said services provided which remain unpaid is approximately $1,563,902.24.

62. As a result of Defendant's failure to fully pay NYWM, a benefit has been conferred upon Defendants.

63. Without making full payment to NYWM, Defendants will obtain that benefit without adequately compensating NYWM.

64. If Defendants are not required to pay NYWM the reasonable and true value of the services rendered to them, they will be unjustly enriched.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff NYWM prays for Judgment in its favor and against Defendants awarding to it the following relief:

a.  An award of compensatory damages in the amount to be determined at trial, but no less than $1,563,902.24;

b.  An award of pre-judgment and post-judgment interest in the maximum amount allowed under the law;

c.  An award of costs and expenses of this action, together with reasonable attorneys' fees; and

d.  An award of such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all of its claims so triable.

Dated: New York, New York
August 7, 2018

GOLDBERG WEG & MARKUS PLLC

 s/ Steven E. Frankel
By: Steven A. Weg (saw@grlawpllc.com)
Steven E. Frankel (sfrankel@grlawpllc.com)
122 West 27th Street, 11th Floor
New York, New York 10001
(212) 697-3250
*Attorneys for Plaintiff NYWM*